FILED

2026 Feb-09  AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY ELAINE THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:25-cv-00205-HNJ |
| | ) | |
| LIMESTONE COUNTY BOARD OF EDUCATION, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Defendants Limestone County Board of Education, Cade Baker, and Ashley Carter filed a Partial Motion to Dismiss Plaintiff Tiffany Elaine Thornton's Complaint. (Doc. 4).   Based upon review of the motion and associated filings, the court **DISMISSES** Counts I, II, and IV of Thornton's Complaint against all Defendants. Count III against Defendants Baker and Carter will proceed.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8, governing pleadings, calls for a short and plain statement of a claim, which, if established, entitles the pleader to relief.   *See Dees v. Lamar*, No. 2:20-cv-1326-LSC-GMB, 2020 WL 13750276, at *2 (N.D. Ala. Nov. 30, 2020) (noting Rule 8(a)(1) requires a plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").   Relatedly, Federal Rule of Civil Procedure Rule 12(b)(6) permits a court to dismiss a complaint if it fails to state a claim

for which relief may be granted.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court revisited the applicable standard governing Rule 12(b)(6) motions to dismiss.  First, courts must take note of the elements a plaintiff must plead to state the applicable claims at issue.  *Id.* at 675.

After establishing the elements of the claim at issue, the court identifies all well-pleaded, non-conclusory factual allegations in the complaint and assumes their veracity.  *Id.* at 679.  Well-pleaded factual allegations do not encompass mere "labels and conclusions," legal conclusions, conclusory statements, or formulaic recitations and threadbare recitals of the elements of a cause of action.  *Id.* at 678 (citations omitted).  In evaluating the sufficiency of a plaintiff's pleadings, the court may draw reasonable inferences in the plaintiff's favor.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

Third, a court assesses the complaint's well-pleaded allegations to determine if they state a plausible cause of action based upon the identified claim's elements.  *Iqbal*, 556 U.S. at 678.  Plausibility ensues "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and the analysis involves a context-specific task requiring a court "to draw on its judicial experience and common sense."  *Id.* at 678, 679 (citations omitted).  The plausibility standard does not equate to a "probability requirement," yet it requires more than a "mere possibility of misconduct" or factual statements that are "merely consistent with a defendant's liability."  *Id.* at 678, 679 (citations omitted).

## BACKGROUND

On February 7, 2025, Plaintiff Tiffany Elaine Thornton filed the present suit pursuant to 42 U.S.C. § 1983, alleging Defendants falsified her son's school attendance records and maliciously initiated truancy proceedings against her.  (Doc. 1).

Specifically, Thornton alleges her child attended Creekside Primary School in Limestone County, Alabama.  (*Id.* at ¶ 8).  Thornton's child missed school "on multiple occasions" due to a formal diagnosis of eosinophilic esophagitis (EoE).[1]  (*Id.* at ¶ 10).  Thornton reportedly "provided timely, valid excuses for all of her son's absences" in accordance with state law.  (*Id.* at ¶ 11).

However, Defendants Baker and Carter allegedly falsified the child's attendance records to indicate Thornton violated state truancy laws.  (*Id.* at ¶¶ 12-13).  When Thornton attempted "to clarify the situation by informing Baker that her son had no unexcused absences because he had valid, timely excuses for each absence," Baker declared "Mrs. Thornton was not going to be allowed to keep her son out of school for three or four days or longer just because she had a doctor's excuse for all of the days in question" and "her son would only be excused for two days regardless of the number of days covered by the doctor's excuse."  (*Id.* at ¶ 14).  Similarly, Carter informed Thornton "she (Carter) and Baker were going to allow only two days to be excused for

---

[1] EoE involves "inflammation of the esophagus caused by an overabundance of certain white blood cells."  The condition commonly produces symptoms of "heartburn, chest pain and difficulty swallowing."  Cleveland Clinic, *Eosinophilic Esophagitis*, https://my.clevelandclinic.org/health/diseases/14321-eosinophilic-esophagitis.

many of Mrs. Thornton's son's longer absences regardless of the length of time the pediatrician thought her son should stay out of school and regardless of the length of time covered by the pediatrician's excuse." (*Id.* at ¶ 15).

"Baker and Carter continued their practice of falsifying said attendance records until such time as the records facially indicated that Thornton's son had over seven unexcused absences," triggering the "appropriate school administrator['s duty] to send a criminal referral to the local district attorney's office for prosecution." (*Id.* at ¶ 16). Based solely on the allegedly falsified records, Baker and Carter "sent, or caused to be sent, a criminal referral to the Limestone County District Attorney ("DA") for the initiation of criminal truancy charges against Mrs. Thornton." (*Id.*).

Upon service of a Juvenile Court Summons on February 22, 2023, Thornton "was compelled by the threat of contempt of court" to attend mandatory court hearings, submit to random drug testing, and attend parenting classes during the pendency of the proceedings, causing her mental anguish and emotional distress. (*Id.* at ¶¶ 18, 20). During the drug test she underwent, "Thornton was compelled to completely disrobe in front of an employee of the contractor used by the Court for administering drug tests." (*Id.* at ¶ 19). Moreover, Thornton alleged the State stripped away "her parental right to withdraw her son from Creekside and place him in another school." (*Id.* at ¶ 18). Furthermore, the court allegedly declined to "accept evidence from Mrs. Thornton" regarding her belief the State fabricated evidence against her and

continued the criminal proceedings for several weeks to investigate whether Thornton stood in contempt of court. (*Id.* at ¶¶ 21-22).

The court ultimately dismissed the charges against Thornton on August 17, 2023, approximately six months after service of the initial Juvenile Court Summons. (*Id.* at ¶ 22).

The Complaint comprises four counts: (I) denial of Thornton's due process right to a fair trial; (II) denial of Thornton's substantive due process right to life, liberty, and property; (III) malicious prosecution; and (IV) deliberate indifference by the Limestone County Board of Education to Baker and Carter's "widespread custom or pattern of falsifying attendance records." (*Id.* at ¶¶ 25-48).

Defendants filed a Partial Motion to Dismiss. (Doc. 4). First, they contend all claims against the Board warranted dismissal because Thornton failed to allege the Board engaged in a custom or policy depriving Thornton of her constitutional rights. (*Id.* at 5-9). Relatedly, Defendants argue the Board stands immune from all potential state law claims under Article I, Section 14 of the Alabama Constitution. (*Id.* at 9-11). Next, they argue Count I fails to state a claim against any defendant because "[a] plaintiff 'cannot have been deprived of a fair trial in the absence of a trial.'" (*Id.* at 12 (quoting *Mastroianni v. Deering*, 835 F. Supp. 1577, 1584 (S.D. Ga. 1993))). Finally, Defendants contend Count II fails to state a claim against any of the Defendants because "a Section 1983 claim for suppression of evidence may only be brought when the plaintiff's

criminal case goes to trial, and the suppression of exculpatory evidence affects the outcome." (*Id.* at 13).

Thornton filed a response indicating she did not oppose the dismissal of Counts II or IV. (Doc. 8 at 8-9). Regarding Count I, however, Thornton contends "a trial is unnecessary . . . for a 1983 fair trial claim to lie," citing decisions from multiple sister circuits. (*Id.* at 1-8).

Defendants filed a reply. (Doc. 10). In addition to their previously raised arguments concerning Count I, they maintain Count I merits dismissal because school administrators do not constitute members of the prosecution team for purposes of a § 1983 fair trial claim based on allegedly fabricated evidence. (*Id.* at 5).

Due to the new legal argument raised in Defendants' reply, Thornton filed a Motion to Strike Portion of Defendants' Reply and Permission to File Surreply. (Doc. 11). The court granted Thornton's motion to file a surreply addressing Defendants' new argument concerning school administrators and deemed Thornton's corresponding motion to strike as moot. (Doc. 16). Thornton filed a surreply on May 12, 2025. (Doc. 17).

## ANALYSIS

### I. PLAINTIFF DOES NOT DISPUTE THE DISMISSAL OF DEFENDANT LIMESTONE COUNTY BOARD OF EDUCATION OR COUNTS II AND IV AGAINST ALL DEFENDANTS.

Thornton "did not intend to allege and did not allege any state law claims against the Board and did not intend to allege and did not allege any claim against the Board in

6

any of her other Counts." (*Id.* at 9).  In addition, Thornton consented to the dismissal of Counts II and IV.  (Doc. 8 at 8-9).  Accordingly, the court **DISMISSES** Defendant Limestone County Board of Education as well as Counts II and IV against the other Defendants.

## II.   THE COMPLAINT FAILS TO STATE A VALID CLAIM FOR DEPRIVATION OF THORNTON'S FOURTEENTH AMENDMENT LIBERTY INTERESTS BASED ON FABRICATION OF EVIDENCE.

In Count I of the Complaint, Thornton alleges a violation of her due process right to a fair trial.  (Doc. 1 at ¶¶ 25-29).  The Fourteenth Amendment's Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause provides "two distinct guarantees: substantive due process and procedural due process."  *DeKalb Stone, Inc. v. Cnty. of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

Thornton does not clearly delineate in her complaint whether she asserts her claim as a substantive due process claim or a procedural due process claim.  (Doc. 1 at ¶¶ 25-29).  Therefore, the court will address both claims.

### A.   Thornton Has Not Advanced a Viable Substantive Due Process Claim.

Generally, "substantive due process has two strands—one that protects against deprivation of fundamental rights and one that protects against arbitrary legislation."  *Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1297 (11th Cir. 2019).  Thornton's due

process claim incites the deprivation of a fundamental right. In that vein, "[s]ubstantive due process includes both the protections of most of the Bill of Rights, as incorporated through the Fourteenth Amendment, and also the more general protection against 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *DeKalb Stone*, 106 F.3d at 959 (quoting *Zinermon*, 494 U.S. at 125).[2]

More pertinently, the Due Process Clause affords the right to a fair trial to warrant deprivations of life, liberty, or property interests in a criminal court proceeding. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial . . . is a basic requirement of due process."); *see also Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) ("A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights.") (citing *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010)). The Due Process Clause particularly precludes the State from deliberately manufacturing false evidence to deprive an accused of a fair trial. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." (citations omitted)); *Schneider v.*

---

[2] As to the latter of the afore-cited substantive due process claims based upon arbitrary, wrongful government actions, the "right to substantive due process . . . protects individuals from arbitrary conduct by government officials that 'shocks the conscience.'" *King v. Pridmore*, 961 F.3d 1135, 1143 (11th Cir. 2020).

*Estelle*, 552 F.2d 593, 595 (5th Cir. 1977) ("If the state through its law enforcement agents suborns perjury for use at the trial, a constitutional due process claim would not be defeated merely because the prosecuting attorney was not personally aware of this prosecutorial activity."); *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) ("[The] planting of false evidence could constitute a violation of Plaintiff's rights under the Federal Constitution and, accordingly, could give rise to liability under Section 1983." (citing, *inter alia*, *Napue*, 360 U.S. at 268-70, and *Schneider*, 552 F.2d at 595)).

Despite titling Count I "Denial of Due Process Right to Fair Trial," (*Id.* at 7), Thornton never proceeded to trial or received a conviction for the truancy charges: the State dropped all charges against Thornton prior to trial.[3]  (*Id.* at ¶ 22).  Nevertheless, Thornton, relying on case law from several other circuits, asserts "a trial is unnecessary in order for a § 1983 fair trial claim to lie."  (Doc. 8 at 2).  She declares, however, "[i]t does not appear that the Eleventh Circuit has addressed this issue head on."  (*Id.* at 7).

Defendants Baker and Carter argue Thornton may not invoke the Fourteenth Amendment to allege deprivations of liberty accruing prior to trial.  (Doc. 4 at 12 ("A plaintiff 'cannot have been deprived of a fair trial in the absence of a trial.'  *Mastroianni v. Deering*, 835 F. Supp. 1577, 1584 (S.D. Ga. 1993).  'The relevant injury in deprivation of fair trial claims is the existence of a potentially unfair trial or verdict, not the mere

---

[3] *Napue, Schneider*, and *Riley* involved plaintiffs challenging their wrongful *convictions* on the basis of fabricated evidence.  Thus, these cases do not address whether an individual who never proceeds to trial may nevertheless advance a Fourteenth Amendment Due Process claim where defendants' fabrication resulted in pre-trial deprivations of liberty.

absence of a fair trial.' *Id*.")).[4]  To this end, Baker and Carter contend Thornton may only seek redress pursuant to the Fourth Amendment for the alleged harms at issue. (Doc. 10 at 3 ("If a plaintiff complains about the initiation of criminal proceedings, that plaintiff may pursue a malicious prosecution claim.")).

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the viability of a substantive due process right to stand free from criminal prosecution except upon probable cause.  510 U.S. at 268.  In *Albright*, Illinois authorities issued an arrest warrant charging Albright with the sale of a substance that resembled an illegal drug.  *Id*.  The court later dismissed the action against Albright because the charge did not state an offense under Illinois law.  *Id*. at 269.  Albright subsequently lodged a § 1983 claim alleging the arresting officer deprived him of his substantive due process right to stand free from criminal prosecution except upon probable cause.  *Id*.

In its decision, the Supreme Court rejected the Fourteenth Amendment's substantive due process doctrine as a foundation for a malicious prosecution claim vis-

---

[4] The parties do not contest a due process claim could proceed if an individual stood trial on the charges, regardless of the outcome of the trial.  Eleventh Circuit precedent confirms this understanding.  In *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1317 (11th Cir. 2015), the State charged the eponymous claimant with "two counts of aggravated assault on a law enforcement officer" and detained him for nearly two years awaiting trial based on a police-fabricated story.  At trial, Weiland received an acquittal.  *Id*.  He subsequently sued the arresting officers under § 1983, alleging "he was detained improperly and prosecuted for charges based on evidence fabricated by the deputies and lies contained in their police reports."  *Id*. at 1328.  The Eleventh Circuit allowed Weiland's § 1983 action to stand despite his acquittal, as "the specific injury identified by Weiland— i.e., unjust incarceration—is a deprivation of liberty redressable under the Due Process Clause of the Fourteenth Amendment."  *Id*. (citing *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009)).

à-vis pre-trial conduct[5]: the Court reminded litigants "the accused is not 'entitled to judicial oversight or review of the decision to prosecute.'" *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (citations omitted).    Rather, the Court identified the Fourth Amendment as the source of constitutional rights for "*deprivations of liberty* that go hand in hand with criminal prosecutions." *Id.* (emphasis added) (citation omitted); *see also id.* at 273 ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))).

The Eleventh Circuit has interpreted *Albright* to bar substantive due process claims alleging a "violation of [the] right to be free from prosecution based upon false evidence/charges." *Rehberg v. Paulk*, 611 F.3d 828, 852 (11th Cir. 2010), *aff'd,* 566 U.S. 356 (2012); *see also id.* at 853 ("[U]nder the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause.    A malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." (citing *Albright*, 510 U.S. at 274));

---

[5] "[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017). Therefore, a litigant may maintain a claim based upon the Fourteenth Amendment's Due Process Clause if there ensues a wrongful conviction or imprisonment based upon fabricated evidence.

*Tinney v. Shores*, 77 F.3d 378, 381 (11ᵗʰ Cir. 1996) ("[A]n allegation of prosecution without probable cause must . . . be analyzed under the Fourth Amendment . . . ."(citation omitted)); *Jordan v. Mosley*, 298 F. App'x 803, 806 (11ᵗʰ Cir. 2008) (Malicious prosecution "is an independent cause of action that potentially is cognizable under the Fourth Amendment."(citing *Uboh v. Reno*, 141 F.3d 1000, 1002–03 n.4 (11ᵗʰ Cir. 1998) (holding if malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of a defendant, the defendant's only remedy is under the Fourth Amendment), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11ᵗʰ Cir. 2020))); *Miller v. Dyer*, No. 1:16-CV-04625-ELR, 2019 WL 11583477, at *4 n.5 (N.D. Ga. Mar. 14, 2019) (citing *Rehberg*, 611 F.3d at 853) (finding no substantive due process violation when plaintiff alleged detective fabricated evidence); *Fletcher v. Miller*, No. 16-62551-CIV, 2016 WL 10919967 (S.D. Fla. Nov. 8, 2016), *report and recommendation adopted,* No. 16-62551-CIV, 2017 WL 7691749 (S.D. Fla. Feb. 13, 2017) (citing *Rehberg*, 611 F.3d at 853) (dismissing plaintiff's substantive due process claim based on allegations sheriff's deputy issued a false arrest report for failure to state a claim upon which relief may be granted); *accord Becker v. Kroll*, 494 F.3d 904, 918-19 (10ᵗʰ Cir. 2007) ("We think the unavoidable construction of *Albright* is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment.").[6]

---

[6] *See also Watkins v. Officer Davlin Session*, No. 19-60810-CIV-ALTMAN/Valle, 2021 WL 663762, at *10 (S.D. Fla. Feb. 19, 2021) (footnote omitted):

As delineated, pretrial deprivations of liberty based on fabricated evidence certainly give rise to a Fourth Amendment claim. *See Manuel v. City of Joliet*, 580 U.S. 357 (2017). In *Manuel*, the State charged the plaintiff with unlawful possession of a controlled substance and detained him prior to trial on the basis of a report deliberately falsified by an evidence technician. *Id.* at 361. The plaintiff spent 48 days in pretrial detention before the State sought dismissal of the charge. *Id.* at 362. The Court sustained the viability of the plaintiff's claim: "If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Id.* at 367; *see also id.* at 369 n.8 ("[O]nce a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment.").

To be sure, the Supreme Court briefly addressed the viability of a due process

---

[I]n the Eleventh Circuit, a fabrication-of-evidence claim is really just a species of malicious prosecution. Put differently, in this Circuit, the right a fabrication-of-evidence claim vindicates is the right not to be prosecuted with fabricated evidence. *See, e.g.*, [*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)] ("Kingsland also asserts a § 1983 claim for malicious prosecution based on the defendants' alleged fabrication of evidence against her[.]"); *Johnson v. Darnell*, 781 F. App'x 961, 964 (11th Cir. 2019) ("As to Johnson's claim for malicious prosecution, he failed to allege facts that would plausibly suggest Cruz or Pino-Diaz were the legal cause of the proceeding against him. Specifically, as noted above, he failed to allege any facts concerning the substance of the evidence or statements Cruz or Pino-Diaz fabricated."); *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and misleading evidence.").

claim based on fabricated evidence in assessing a statute of limitations issue vis-à-vis such a claim. *McDonough v. Smith*, 588 U.S. 109, 115 (2019). *McDonough* involved a plaintiff charged with forging absentee ballots for a primary election. *Id.* at 112. The prosecution relied on allegedly false affidavits, coached witnesses, and a suspect DNA analysis to support the charges. *Id.* at 113. The allegedly false evidence led to McDonough's arrest, arraignment, and release (with restrictions on his travel) pending trial. *Id.* at 113. The prosecutor litigated McDonough's case to trial twice, the first ending in a mistrial and the second resulting in an acquittal on all charges. McDonough subsequently sued the prosecutor under § 1983.

As applicable in this case, the Court neither affirmed nor disavowed the viability of a due process claim based upon fabricated evidence:

> Though McDonough's complaint does not ground his fabricated-evidence claim in a particular constitutional provision, the Second Circuit treated his claim as arising under the Due Process Clause. [*McDonough v. Smith*, 898 F.3d 259, 266 (2d Cir. 2018).] McDonough's claim, this theory goes, seeks to vindicate a "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Ibid.* (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000)); *see also, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959). We assume without deciding that the Second Circuit's articulations of the right at issue and its contours are sound, having not granted certiorari to resolve those separate questions. *See Heck v. Humphrey*, 512 U.S. 477, 480, n.2 (1994) (accepting the lower courts' characterization of the relevant claims).

*McDonough*, 588 U.S. at 115 (cleaned up). The Court continued in a footnote:

> In accepting the Court of Appeals' treatment of McDonough's claim as one sounding in denial of due process, we express no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence enforceable through a

42 U.S.C. § 1983 action. *See Soldal v. Cook County*, 506 U.S. 56, 70 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands"). Moreover, because the Second Circuit understood McDonough's due process claim to allege a deprivation of liberty, we have no occasion to consider the proper handling of a fabricated-evidence claim founded on an allegation that the use of fabricated evidence was so egregious as to shock the conscience, see, e.g., *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998), or caused harms exclusively to "interests other than the interest in freedom from physical restraint," *Albright v. Oliver*, 510 U.S. 266, 283 (1994) (Kennedy, J., concurring in judgment); see also, e.g., W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, p. 870 (5th ed. 1984) (Prosser & Keeton) ("[O]ne who is wrongfully prosecuted may suffer both in reputation and by confinement"). Accordingly, we do not address what the accrual rule would be for a claim rooted in other types of harm independent of a liberty deprivation, as no such claim is before us. *See* [*McDonough*, 898 F.3d at 266].

*McDonough*, 588 U.S. at 115 n.2 (cleaned up).[7]

While the *McDonough* decision allowed the fabrication of evidence claim to proceed under the Fourteenth Amendment's Due Process Clause, the Court did so without creating binding precedent such a claim appropriately articulated the right at issue or soundly defined its contours. *McDonough*, 588 U.S. at 115; *see also id.* at 127 (Thomas, J., dissenting) ("[E]ven if the Second Circuit were correct that McDonough asserts a violation of the Due Process Clause, it would be preferable for the Court to determine the claim's elements before deciding its statute of limitations.").[8]

---

[7] Notably, the Court opined, "Though McDonough was not incarcerated pending trial, he was subject to restrictions on his ability to travel and other 'restraints not shared by the public generally,' *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301 (1984), and as the case comes to this Court, it is undisputed that McDonough has pleaded a liberty deprivation. *See* [*McDonough v. Smith*, 898 F.3d 259, 266 (2d Cir. 2018)]." *McDonough v. Smith*, 588 U.S. 109, 117 n.4 (2019) (cleaned up).

[8] In addition, unlike Thornton, McDonough stood trial twice. *McDonough*, 588 U.S. at 113. Therefore, although the court did not indicate standing trial constituted an essential element of the plaintiff's

Hence, applicable precedent does not establish the viability of a Fourteenth Amendment substantive due process claim in the circumstances at bar.[9]  Accordingly, Thornton's Fourteenth Amendment claim warrants dismissal on this basis.[10]

_____

claim, the facts of *McDonough* do not clearly establish a plaintiff may pursue a due process claim for evidence fabrication when the plaintiff's criminal case did not ultimately go to trial.  (*See* Doc. 4 at 12).
[9] Thornton cites *Paylan v. Teitelbaum*, 798 F. App'x 458 (11th Cir. 2020), for the proposition that "no trial is needed for a § 1983 fabricated evidence claim."  (Doc. 17 at 5).  First and foremost, the *Paylan* decision constitutes an unpublished panel opinion that cannot override the clear precedent provided in *Rehberg*.  Litigants cannot maintain due process claims stemming from pretrial injuries predicated upon fabricated evidence.

Furthermore, other than citing *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997), for the proposition that "fabricating incriminating evidence violates an accused's constitutional rights," 798 F. App'x at 465, the *Paylan* decision, in rejecting the claim for insufficient evidence, does not expressly identify the constitutional provision underpinning the right.  To be sure, *Riley*, a substantive due process case, involved allegations of fabricated evidence resulting in incarceration post-trial, so Thornton's appeal to the *Paylan* decision arises from its *Riley* reference in circumstances devoid of a trial or hearing vis-à-vis the *Paylan* plaintiff's involuntary admission for drug abuse treatment. However, the *Paylan* circumstances incite a Fourth Amendment unreasonable seizure claim just as readily as a due process deprivation of liberty interests claim.  Therefore, *Paylan* serves as poor authority for Thornton's entreaty.
[10] To be sure, several circuits countenance such claims based upon the substantive due process doctrine.  *See Harris v. Town of S. Pines*, 110 F.4th 633, 646 (4th Cir. 2024) (contrasting a Fourth Amendment claim where the alleged harm consists of "wrongful detention without probable cause" with a Fourteenth Amendment fabrication of evidence claim where "the alleged harm is that the entire panoply of rights afforded to criminal defendants was infected by the fabricated evidence, thus wrongfully depriving the defendant of their liberty.  For example, '[t]he setting of bail, which may make the difference between freedom and confinement pending trial, and the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action, may depend on the prosecutor's and magistrate's assessments of the strength of the case, *which in turn may be critically influenced by fabricated evidence.*'" (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016))); *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) ("Moreover, to insist that a deprivation of liberty requires custody or a conviction overlooks the fact that Barnes's prosecution on the drug sale charge is itself a deprivation of liberty.  For fabricated-evidence claims based on due process, we have previously recognized that a plaintiff's 'prosecution' can be a 'deprivation of liberty.'" (citing *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (describing "judicial proceedings" as "liberty-depriving" in the context of a fabricated-evidence claim))); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) ("We do not interpret *Albright* as establishing a rule that Fourth Amendment violations are the only proper grounds for malicious prosecution claims under § 1983.").

The putative "injuries might be cognizable as due process violations through a gap in constitutional protection created by *Albright*'s limitation of § 1983 malicious prosecution claims to those based on

**B. Thornton Does Not Allege a Viable Procedural Due Process Claim.**

Alternatively, Thornton may have to sought to lodge a procedural due process claim rather than a substantive due process claim. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon*, 494 U.S. at 125 (citation omitted). In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

1. <u>Thorton Possesses a Constitutionally-Protected Liberty Interest.</u>

Thornton contends Baker and Carter's actions deprived her of liberty; principally, the State compelled Thornton "to attend multiple court hearings, to

---

the Fourth Amendment." *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007); *see also Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015) ("Where police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation."), *cert. granted, judgment vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), and *opinion reinstated in relevant part,* 905 F.3d 334 (5th Cir. 2018), *overruled on other grounds by, Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019); *cf. Albright v. Oliver*, 510 U.S. 266, 291 (1994) (Souter, J., concurring in judgment) ("There may indeed be exceptional cases where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure. Whether any such unusual case may reveal a substantial deprivation of liberty, and so justify a court in resting compensation on a want of government power or a limitation of it independent of the Fourth Amendment, are issues to be faced only when they arise. They do not arise in this case and I accordingly concur in the judgment of the Court.").

undergo an unannounced drug test at her own expense after her first hearing, to be subject to random drug tests, to attend multiple parenting classes, and to ensure that her son was not late or absent from school on any occasion during the pendency of the criminal proceeding." (Doc. 1 at ¶ 18). During the unannounced drug test, Thornton "was compelled to completely disrobe in front of an employee of the contractor used by the Court." (*Id.* at ¶ 19). While Thornton faced pending truancy charges, "[s]he was also stripped of her parental right to withdraw her son from Creekside and place him in another school." (*Id.* at ¶ 18). In addition, Thornton asserts the proceedings subjected her to embarrassment, invasion of her privacy, and damage to her reputation. (*Id.* at ¶ 20).

"A liberty interest can originate from the Constitution or from a state statute or regulation." *Schaeffer by & through Schaeffer v. Fulton Cnty. Sch. Dist.*, No. 1:17-CV-04383-JPB, 2020 WL 10485696, at *4 (N.D. Ga. Feb. 4, 2020) (citing *Meachum v. Fano*, 427 U.S. 215, 225-26 (1976)). "If a state creates a substantive liberty interest by statute, then it must afford due process before taking that liberty interest." *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 477-78 (1995)). Importantly, though, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim for entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

As recounted, Thornton alleges a deprivation of liberty due to the court requiring her to attend hearings under threat of contempt. In *Schaeffer*, a factually similar case, parents Mark and Jennifer's minor child William "suffer[ed] from disabilities that

impact[ed] his school attendance and performance." 2020 WL 10485696, at *1. Like Thornton, the Schaeffers alleged the defendants "repeatedly marked William with unexcused absences for absences that qualified as excused" due to William's medical needs. *Id.* Despite the parents' multiple requests for assistance from the school, "Defendants allegedly filed a false Child in Need of Services ('CHINS') Referral in which they stated William had forty unexcused absences and court intervention was necessary to assist with William's educational support." *Id.* Due to this referral, the plaintiffs "were directed to appear in Fulton County Juvenile Court," where the court determined "they were already making extraordinary efforts to help William access school." *Id.*

Nevertheless, three days after the hearing, the defendants escalated the CHINS referral to a CHINS petition; "Defendants alleged in the CHINS petition that William was truant in need of juvenile court supervision." *Id.* Pursuant to this petition, "Plaintiffs were summoned to juvenile court again and required to defend against the allegations in the Petition." *Id.* After holding another hearing, the Juvenile Court dismissed the petition against the Schaeffers. *Id.* Thereafter, the plaintiffs filed a Complaint asserting, *inter alia*, a § 1983 claim for denial of procedural due process. *Id.*

The Schaeffers contend they possessed "a liberty interest to not be forced by penalty of law into court to answer a false, illegal petition." *Id.* at *4. The court held those allegations did not evince a constitutionally-protected liberty interest. *Id.* at *6. In so holding, the court analogized plaintiffs' argument to a similar procedural claim in

*Todorov v. DCH Healthcare Authority*, 921 F.2d 1438 (11th Cir. 1991), where the Eleventh Circuit found this "[was] precisely the type of argument the Supreme Court of the United States rejected in *Olim* [461 U.S. 238] when it articulated that process is not an end in itself." *Schaeffer*, 2020 WL 10485696, at *5 (citing *Todorov*, 921 F.2d at 1463 n.39); *see also Todorov*, 921 F.2d at 1463-64 (holding a neurologist seeking additional privileges at a general hospital did not possess a due process interest in the procedures used to grant or deny such privileges if "there is no protected interest in the privileges"); *Schaeffer*, 2020 WL 10485696, at *5 ("[T]his argument fails because 'an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.'" (citing *Olim*, 461 U.S. at 250 n.12)).

The same analysis applies to Thornton's argument she held a constitutionally-protected liberty interest in not "[being] compelled by the threat of contempt of court to attend multiple court hearings." (Doc. 1 at ¶ 18). Accordingly, a procedural due process claim fails in this regard. *See Alexander v. McKinney*, 692 F.3d 553, 557 n.2 (7th Cir. 2012) ("Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty. . . . It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process.").

Thornton also contends she suffered humiliation, embarrassment, and damage to her reputation because she "was involuntarily put into circumstances where she was viewed by all as a bad and/or irresponsible parent and/or a drug user and criminal."

(Doc. 1 at ¶ 19). "The Supreme Court . . . has held that injury to reputation, by itself, does not constitute the deprivation of a liberty or property interest protected under the Fourteenth Amendment." *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005) (citing *Paul v. Davis*, 424 U.S. 693, 701-02 (1976)). This doctrine, known as the "stigma-plus" test, requires "the individual must be not only stigmatized but also stigmatized in connection with . . . [a] government official's conduct [that] deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." *Rehberg*, 611 F.3d at 852 (quoting *Behrens*, 422 F.3d at 1260); *see also Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1436-37 (11th Cir. 1998) ("[A] plaintiff [must] show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation."); *Zak v. City of Arab*, No. 4:15-cv-00232-JEO, 2015 WL 4508010, at *6 (N.D. Ala. July 24, 2015) (holding reputational damages due to defamatory comments "are not recoverable under § 1983 unless the 'damages were incurred as a result of government action significantly altering the plaintiff[s'] constitutionally recognized legal rights'" (alteration in original) (quoting *Cypress Ins. Co.*, 144 F.3d at 1438)); *N.M. v. Buckner*, No. 2:22-cv-442-RAH, 2023 WL 2876166, at *6-7 (M.D. Ala. Apr. 10, 2023) (finding plaintiffs sufficiently satisfied the stigma-plus test by alleging their names were placed on a central child abuse registry causing stigmatization and "distinct alterations" of their rights to family integrity).

Thornton alleges Baker and Carter's fabrication of evidence subjected her to

circumstances which harmed her reputation. Nevertheless, Thornton's allegations of humiliation and reputation damage cannot, alone, sustain her due process claim. However, the court may consider such harms if Thornton demonstrates deprivation of a separate, constitutionally-protected liberty or property interest in connection with this alleged defamation.

Thornton contends the Juvenile Court required her to undergo a drug test, during which she "was compelled to completely disrobe in front of an employee of the contractor used by the Court for administering drug tests." (Doc. 1 at ¶¶ 19, 18). Such drug tests, formally termed urinalysis, involve collecting and testing urine samples, often under direct observation to detect tampering. Conduct of such drug tests constitutes a search under the Fourth Amendment. *See Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 617 (1989) ("Nor can it be disputed that the process of collecting the sample to be tested, which may in some cases involve visual or aural monitoring of the act of urination, itself implicates privacy interests."); *see also Everett v. Napper*, 833 F.2d 1507, 1511 (11th Cir. 1987) ("Since the fourth amendment was designed to protect personal privacy and dignity, we agree that a urinalysis is a search."); *Nat'l Treasury Emps. Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir. 1987), *aff'd in part, vacated in part,* 489 U.S. 656 (1989) ("In several ways, drug screening by urinalysis infringes the employee's reasonable expectation of privacy and thereby constitutes a search under the fourth amendment. There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It

is a function traditionally performed without public observation . . . .").

While the Constitution does not recognize any absolute right to privacy, *see Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 255 (2022), various "'zones of privacy' . . . have been recognized as warranting protection[,] . . . includ[ing] the right to be free from unreasonable search and seizure," *Carroll by Carroll v. Parks*, 755 F.2d 1455, 1456-57 (11th Cir. 1985). This right, though, finds its constitutional basis in the Fourth Amendment. *See Skinner*, 489 U.S. at 613-14 ("The [Fourth] Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their direction." (citations omitted)). "[W]here as here a claim is raised under the specific protections of the Fourth Amendment, the claim should be pursued under that amendment and not the more generalized protections of the Due Process Clause of the Fourteenth Amendment." *Kilpatrick v. United States*, 578 F. Supp. 2d 1339, 1348-49 (N.D. Fla. 2008) (citing *Tinney*, 77 F.3d at 381); *see also Albright*, 510 U.S. at 281 ("'Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of . . . governmental conduct,' we said, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham*, 490 U.S. at 395)).

Therefore, any claim for an alleged deprivation of Thornton's liberty arising from the drug screen's privacy infringement must proceed under the Fourth Amendment. Hence, this alleged harm cannot sustain her procedural due process claim. *Cf. Strunin*

*v. Darnell*, No. 108-CV-197-SPM-AK, 2009 WL 1956711, at *2 (N.D. Fla. July 2, 2009) (dismissing plaintiff's claims that a blanket strip search policy for each person booked in the county jail violated his procedural due process rights); *see also id.* ("While the Amended Complaint claims a violation of procedural due process under the Fourteenth Amendment instead of the Fourth Amendment violation that was pleaded in the original Complaint, the Supreme Court has made clear that the Fourth Amendment, with its specific guarantees, is the appropriate source of rights against pretrial deprivations of liberty. . . . [C]ourts have found that when an amendment specifically addresses a right, it is that amendment, and not the vague Due Process provisions of the Fourteenth Amendment, that is the proper source for a potential cause of action.").

Notably, though, Thornton also alleged she underwent the test at her own expense. The money she expended for the test likely represents a protected property interest, which could sufficiently support the first prong of her procedural due process claim because a person clearly has a property interest in their funds. *See, e.g.*, *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337 (1969) (identifying wages as a protected property interest when discussing the necessary procedures for wage garnishment pursuant to the Due Process Clause).

Even if the fee Thornton paid for the drug test constituted an insufficient constitutionally-protected interest, Thornton also alleged the court "stripped [her] of her parental right to withdraw her son from Creekside and place him in another school." Parents generally possess fundamental rights regarding the care and upbringing of their

24

children.  *See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923) (noting the "liberty"

protected by the Due Process Clause includes the right of parents to "establish a home

and bring up children" and "to control the education of their own").  Such rights

include deciding whether to enroll a child in public school.  *See Pierce v. Soc'y of the Sisters*

*of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) ("The fundamental theory of

liberty upon which all governments in this Union repose excludes any general power of

the state to standardize its children by forcing them to accept instruction from public

teachers only."); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395–96 (6th Cir. 2005)

(noting "parents may have a fundamental right to decide *whether* to send their child to a

public school").    Inasmuch as Thornton alleges the State prevented her from

withdrawing her son from public school and enrolling him in a private school or

alternate homeschooling plan, the Complaint states a cognizable liberty deprivation.[11]

---

[11] Thornton also asserts the court required her "to ensure that her son was not late or absent from school on any occasion during the pendency of the criminal proceeding."  This averment does not identify an infringement of a constitutionally-protected liberty or property interest.  Although parents and guardians possess a right to "direct the upbringing and education of children under their control," *Pierce v. Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925), it does not constitute an absolute right.  "There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education."  *Wisconsin v. Yoder*, 406 U.S. 205, 213-14 (1972) (holding courts must balance "a State's universal interest in education" with "fundamental rights and interest, such as . . . the traditional interest of parents with respect to the religious upbringing of their children so long as they . . . 'prepare (them) for additional obligations'" (quoting *Pierce*, 268 U.S. at 535)).

While Alabama cannot require parents to send their children to public school, the state can require parents to educate their children, either through public, private, or homeschooling, and can impose reasonable requirements on parents who elect to educate their children in the public school system.  *See Pierce*, 268 U.S. at 534 ("No question is raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils; *to require that all children of proper age attend some school*, that teachers shall be of good moral character and patriotic

In summary, Thornton's alleged deprivations include three constitutionally-protected liberty and property interests potentially cognizable under the Fourteenth Amendment: the restrictions placed on her ability to withdraw her son from the school, the funds she relinquished to pay for a required drug test, and the harm her reputation suffered.[12]

2.  The Defendants Engaged in State Action.

The conduct Thornton asserts as the cause of her stated deprivations of liberty and property constitutes state action. Defendants Baker and Carter, both public school employees, represent state actors. (*See* Doc. 1 at ¶¶ 5-6 ("Defendant Baker is now and was at all times material hereto the Principal of Creekside Primary School located in Limestone County, Alabama. At all times and in all ways material hereto Baker was a local county official acting under color of state law and a person subject to suit in his personal capacity under § 1983. . . . Defendant Carter is now and was at all times

---

disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which is manifestly inimical to the public welfare." (emphasis added)). Accordingly, Alabama state law requires school attendance for children between the ages of 6 and 17, and it holds parents accountable if they fail to regularly require the child to attend school. *See* Ala. Code §§ 16-28-2.1, -3, -12. It also requires parents to explain, as soon as practical, "the cause of any absence of the child under his control or charge which was without permission of the teacher"; "a failure to furnish such explanation shall be admissible as evidence of such child being a truant with the consent and connivance of the person in control or charge of said child . . . ." Ala. Code § 16-28-15. Therefore, the school did not have to tolerate excessive school tardiness or absences without explanation, to the extent such conduct occurred.

[12] Again, while her reputational harms alone cannot support a claim, as discussed *supra*, a court may consider these harms in combination with other alleged deprivations of liberty and property. *See Rehberg v. Paulk*, 611 F.3d 828, 852 (11th Cir. 2010), *aff'd,* 566 U.S. 356 (2012) ("[T]he 'stigma-plus' test . . . requires the plaintiff to show both a valid defamation claim (the stigma) *and* 'the violation of some more tangible interest' (the plus)." (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001))).

material hereto the Assistant Principal of Creekside Primary School located in Limestone County, Alabama.  At all times and in all ways material hereto Carter was a local government official acting under color of state law and a person subject to suit in her personal capacity under § 1983.")).

Furthermore, Baker and Carter undertook student-attendance record-keeping and sent a criminal referral to the local district attorney's office for the initiation of truancy charges against Thornton pursuant to state law.  (*See* Doc. 1 at ¶ 16 ("When a student has seven or more unexcused absences, state law requires the appropriate school administrator to send a criminal referral to the local district attorney's office for prosecution.  Defendants Baker and Carter were at all material times aware of said state law and were ultimately responsible for Creekside's compliance with said law."); doc. 17 at 3 ("In the present case, the Defendants were responsible for gathering facts and evidence (i.e., determining when Plaintiff's child was absent and whether the absence was excused), keeping records of those facts, making a formal report of those facts, forwarding the report to prosecutors as required by law, and making themselves available as prosecution witnesses. . . .  Section 16-28-12, Code of Alabama 1975 specifically requires school officials to document absences and to report violations of the State's truancy laws to the district attorney.")).

As alleged in Thornton's Complaint, Baker and Carter performed critical evidence-gathering and reporting responsibilities as required by Section 16-28-12 of the Alabama Code.  *See* Ala. Code § 16-28-12(c) ("Any parent, guardian, or other person

having control or custody of any child enrolled in public school who fails to require the child to regularly attend the school . . . *shall be reported by the principal* to the superintendent of education of the school system in which the suspected violation occurred. *The superintendent of education or his or her designee shall report suspected violations to the district attorney within 10 days. Any principal* or superintendent of education or his or her designee intentionally failing to report a suspected violation shall be guilty of a Class C misdemeanor." (emphasis added)). As the statute indicates, school principals possess a compulsory duty to report suspected truancy violations.

In addition, Thornton alleges Baker and Carter labelled her son's absences as unexcused even though Thornton presented them with valid doctor's notes to account for the absences. (*See, e.g.,* doc. 1 at ¶ 15 ("Defendant Carter told Mrs. Thornton that she (Carter) and Baker were going to allow only two days to be excused for many of Mrs. Thornton's son's longer absences regardless of the length of time the pediatrician thought her son should stay out of school and regardless of the length of time covered by the pediatrician's excuse."), ¶ 25 ("Defendants Baker and Carter, acting individually and in concert, deliberately and knowingly fabricated false evidence in the form of 'doctored' official attendance records kept and maintained on Mrs. Thornton's son.")). Moreover, she asserts Baker and Carter forwarded the allegedly false information to prosecutors to initiate the truancy proceedings, resulting in the alleged deprivations of Thornton's constitutionally-protected liberty and property interests. (*Id.* at ¶ 16 ("As a direct result of said falsified attendance records Defendants Baker and Carter sent, or

caused to be sent, a criminal referral to the Limestone County District Attorney ('DA')

for the initiation of criminal truancy proceedings against Mrs. Thornton."), ¶¶ 27-28

("The false information sent to the DA by Baker and Carter was the only evidence

against Mrs. Thornton. . . .  As a result of Baker and Carter's deliberate provision of

fabricated, false attendance information to the DA, Mrs. Thornton suffered a

deprivation of her due process right to a fair trial and to her life, liberty, and property

interests . . . .")).

     Therefore, the afore-described conduct constitutes state action.[13]

3.  <u>Thornton Received Constitutionally-Adequate Process.</u>

     Nevertheless, Thornton cannot establish a due process violation because she

---

[13] Baker and Carter do not explicitly contest whether they represent state actors.  They do, however, claim school administrators do not comprise members of a "prosecution team" for purposes of a § 1983 constitutional claim.  (Doc. 10 at 5 ("Baker and Carter are not members of a prosecution team, but rather they are school administrators.  Thus, they are not proper defendants to this claim.")).  Some courts cognizing a Fourteenth Amendment fabrication-of-evidence claim require an alleged offender exercise authority as an investigating official or a member of a prosecution team.  *See, e.g.,* *Fitzgerald v. State Ct. of Bibb Cnty.*, No. 5:24-CV-190 (CAR), 2024 WL 3881487, at *5 (M.D. Ga. Aug. 19, 2024); *Garnett*, 838 F.3d at 280.  The elements of a procedural due process claim contain no such requirement.

Moreover, Eleventh Circuit caselaw establishes Baker and Carter likely represent members of the prosecution team.  Circuit caselaw defines members of a "prosecution team" as "the prosecutor or anyone over whom he has authority," which includes "both investigative and prosecutorial personnel."  *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002) (quoting *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989)).  Other courts maintain officials serving in separate agencies may perform investigative functions in direct furtherance of a prosecution.  *See, e.g., United States v. Pelullo*, 399 F.3d 197, 216 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("Here, there is no question that certain [Department of Labor] agents were integral members of the prosecution team."); *United States v. Bin Laden*, 397 F. Supp. 2d 465, 485 (S.D.N.Y. 2005), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008) (finding agents of Marshalls Service's Witness Security Program served on prosecution team where agents "installed and continuously operated . . . video-teleconference equipment at the prosecutors' request").

received constitutionally-adequate process. "Nothing in [the Fourteenth] Amendment protects against all deprivations of life, liberty, or property by the State." *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). "The Fourteenth Amendment protects only against deprivations 'without due process of law.'" *Id.* (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 126.

"There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of life, liberty, or property at the hands of the government." *Grayden*, 345 F.3d at 1232. However, the specific procedural protections due process requires in a particular case reflects "a flexible concept that varies with the particular situation." *Zinermon*, 494 U.S. at 127.

Thornton alleges Baker and Carter deprived her liberty and property interests via their "deliberate provision of fabricated, false attendance information to the DA." (Doc. 1 at ¶ 28). Actually, the alleged deprivation of interests resulted from state court rulings influenced by the Defendants' alleged misconduct. That is, the deprivation of Thornton's interests occurred pursuant to the provision of process, i.e., the juvenile court hearings. In such posture, there ensues no need to focus upon post-deprivation remedies vis-à-vis a procedural due process claim: the deprivation of asserted interests did not result from "random and unauthorized" conduct where "predeprivation

process was impracticable" and infeasible. *Rittenhouse v. DeKalb Cnty.*, 764 F.2d 1451, 1454 (11th Cir. 1985) (citing *Parratt*, 451 U.S. at 541); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)) (holding "post-deprivation remedies do not satisfy the due process requirement where the deprivation of property is effected pursuant to established state procedure, rather than through random, unauthorized action"); *Augustine v. Doe*, 740 F.2d 322, 329 (5th Cir. 1984) ("*Parratt* applies only when the nature of the challenged conduct is such that the provision of predeprivation procedural safeguards is impracticable or infeasible."), *cited in* Sheldon H. Nahmod, CIVIL RIGHTS & CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 3:53 (2025).

Therefore, in this case "it was the state statutes or procedures themselves that effected a deprivation," *Rittenhouse*, 764 F.2d at 1455, i.e., the actual pre-deprivation procedures—the juvenile court proceedings—that occasioned Thornton's deprivation. *See also Augustine*, 740 F.2d at 327-28 ("*Parratt* posits a distinction between (1) the random and unauthorized (and hence unpredictable) conduct of a state actor, and (2) conduct that the state can contain and direct by instituting procedural safeguards. . . . The availability of a postdeprivation tort remedy does not satisfy the requirements of due process in such cases." (citations omitted)).

Properly conceived, Thornton's putative procedural due process claim inquires "what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or

31

administrative procedure of effecting the deprivation . . . ." *Zinermon*, 494 U.S. at 126. Setting aside whether the Defendants actually constitute proper litigants in a suit challenging the due process adequacy of state court procedures, Thornton's "procedural due process interests . . . were adequately protected by . . . the procedures offered to challenge" the truancy charges. *Becker*, 494 F.3d at 919. The Juvenile Court provided Thornton multiple hearings, ultimately allowing Thornton to successfully challenge her charges. *Cf. Rehberg*, 611 F.3d at 853 ("Rehberg does not allege Dougherty County or the individual defendants denied him the constitutionally required procedures necessary to challenge his indictments and arrest. Indeed, Rehberg's successful challenges to the three indictments show otherwise."); *Rittenhouse*, 764 F.2d at 1455 ("Similarly in *Logan*, the state procedures that were challenged were themselves predeprivation procedures. Those procedures were tested against the requirements of procedural due process, and were found to be deficient.").[14]

Hence, this court may not "supply procedural requirements in addition to already-established criminal procedure under the Constitution and state law." *Becker*, 494 F.3d at 921. Therefore, as Thornton cannot demonstrate she has received constitutionally-inadequate process, her procedural due process claim fails. *See Mines v. Barber*, 610 F. App'x 838, 840 (11th Cir. 2015) ("As Mr. Mines cannot establish the lack

---

[14] Typically, a procedural due process claim in this regard would assess the adequacy of predeprivation procedures pursuant to the factors established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). There exists no need to apply those factors because Thornton has presented no challenge to the juvenile court procedures.

of an adequate process to redress his harm, his claim fails as a matter of law."). Accordingly, Thornton's allegations do not suffice to state a Fourteenth Amendment claim.

## CONCLUSION

In summary, the court **DISMISSES** Defendant Limestone County Board of Education and counts II and IV because Thornton does not object to their dismissal. Further, the court **DISMISSES** Count I because Thornton fails to state a valid claim for deprivation of her Fourteenth Amendment right to due process. Accordingly, the court **ORDERS** Defendants to file a responsive pleading to Count III of Plaintiff's Complaint at or within fourteen (14) days of the entry of this opinion.

**DONE** and **ORDERED** this 9th day of February, 2026.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE